HENRY KING Ex'r *vs.* W. & W. R. R. CO.

1. The power of the Courts to declare statutes unconstitutional is a high prerogative, and ought to be exercised with great caution; they should "not declare a statute void, unless the nullity and invalidity of the act, are in their judgment placed beyond a reasonable doubt; and such reasonable doubt must be solved in favor of legislative action."

2. The Act of the General Assembly of 1866-67, entitled "an Act relating to debts contracted during the war," and allowing either party to show on the trial, the consideration of the contract, and the jury in making up their verdict to take the same into consideration, is not unconstitutional.

3. Therefore, it was not erroneous in a judge to instruct a jury that in making up their verdict they might consider the value of the article sold—notwithstanding there was an agreement, that the price should be paid in Confederate currency.

*Robeson* v. *Brown,* 63 *N. C.,* 554, *Hilliard* v. *Moore,* 65 *N. C.,* 540, cited and approved.

Civil action tried before Watts, Judge, at Spring Term 1871, of Wilson Superior Court.

This action was brought by the plaintiff to recover of the defendant the value of a certain quantity of wood. It was proved by the plaintiff that his testatrix on the 18th day of July 1864, sold to the defendant 583½ cords of wood, and on the 1st day February, 1865, 422½ cords, at $1.10 per cord, and that it was agreed that the price should be paid in Confederate currency. The counsel for the defendant asked the Court to instruct the jury that the plaintiff according to the contract, was only entitled to recover according to the scale, the value of the Confederate currency, and not the value of the wood.

The Court declined the instructions, and directed the jury to return a verdict for the value of the wood, which was proved

to be fifty cents per cord, and the jury accordingly assessed the value of the wood at $503, and judgment was rendered for the same.

The defendant alleged that the Court erred:

1. In refusing the instructions asked for.

2. In instructing the jury to return a verdict for the value of the wood.

Motion for a new trial.    Motion overruled.    Judgment

Appeal to the Supreme Court.


*Battle & Sons* for plaintiff.

*Moore & Gatling* for the defendants filed the following brief :

1. The contract (verbal) made in July, 1864, was " $1.10 per cord to be paid in Confederate money." This was the general currency at that time, and its value, compared with coin was $21 in currency for $1 in coin.

2. Had it been paid on the day after the contract, the contract would have been fulfilled in spirit and letter.

3. An unwritten contract, after its terms are fixed, is as much protected by the Constitution of the United States as one that is written with a fixed meaning.

4. An obligation to pay in Confederate currency is a lawful contract, and is protected in like manner as an obligation to pay in coin of the United States. Currency is money in the usual acceptation of the term. *Thorington* v. *Smith*, 8 Wall. 1.

5. This is an "Executory contract, solvable in money." The ordinance of 18th October, 1865, declares that "all executory contracts, solvable in money, whether under seal or not, made after the depreciation of Confederate currency before 1 May, 1865, shall be deemed to have been made with the understanding that they were solvable in money of the value of said currency," &c., see 3.    See Acts of 1366, ch. 38, 39, p. 98, 99, and 1867, ch. 44, p. 62.

6. The ordinance was never intended to alter or vary the contract. Such object was forbidden by the Constitution of the United States. It purpose was to open the door, and allow evidence at law on all such contracts, instead of driving the parties into Equity. Besides the costs and delay of such a proceeding, the sums, in most cases were too small to allow its jurisdiction.

7. The scale was adopted, not to *alter* the contract but conveniently to give general information of the degree of depreciation at different times. It does not prevent any person from controverting its correctness, who may think it does not speak the truth.

8. It differs, in this respect, from the scale of 1780. *Rev. Code* of 1820, ch. 189. This act absolutely regulated the value of *Continental* money from December 1776 to the close of the year 1782. S. 1, 2 and 4. License, however, was allowed to ascertain by evidence the meaning of the contracting parties as to debts payable *in future.* Sec 4. In all other matters the act was mandatory without regard to the intent of the parties. There was no Constitutional inhibition by the United States to do this. It was ever construed as mandatory. 1 *Hay*, 183. Anon. *Winslow* v. *Bloom*, Ib. 217. Ib 384, Anon.

9. During the period of depreciation of *Confederate* currency, all executory contracts, solvable in money of any kind, whatever may be their consideration, whether for *land* or the loan of Confederate *money*, fell under the presumption that they were dischargeable in Confederate currency or money of the value of that currency, unless other currency be named. And so long as this presumption continues, or whenever it shall be established, after controversy, that Confederate money was the currency intended, the scale must be applied in order to arrive at the true value of the contract.

10. If the parties, in their contract, had reference to Confederate currency as the value of the consideration, the contract must be construed in the same manner as if they had

expressly named that currency. To hold otherwise is to *im-pair* the contract.

11. However inadequate the price of an article may seem to the Court, when it is ascertained that the parties intended it should be solvable in money of the value of Confederate currency, that price is the law of the Court, because it is the law of the parties ; and all relief from apparent hardship is as much for-bidden, as if the parties had, in their contract, estimated the value of the currency and allowed the obligation to be solved in the one or the other at their estimated value.

I submit a brief review of the cases upon the subject. Not-withstanding the comprehensive language of the ordinance, the cases of *Robeson* v. *Brown*, 63 N. C. 554, and *Maxwell* v. *Hipp*, 64 N. C. 98, assert that "the ordinance applies only to contracts, when Confederate money was the consideration. In all other cases of contracts, the value of the property or other consideration, may be shown in evidence, and the jury must estimate such value in United States Treasury notes."

The cases of *Dancy* v. *Braswell*, 64 N. C. 203 ; *Williams* v. *Rockwell*, 64 N. C. 325 ; *Parker* v. *Carson*, 64 N. C. 563 ; *Brown* v. *Foust*, 64 N. C. 672, seem to abandon the actual con-tract as intended and made by the parties, with a view to regulate it by recurring to the value of the article sold.

Such is the issue made in these cases, instead of making it as to the *kind* of money intended by the parties. In the last of these cases it is held that "the value of the contract is regulated by the Acts of 1866," and not by the intent of the parties.

*Laws* v. *Rycroft*, 64 N. C. 100, presents a case where, by the evidence before the jury, the intent is so confused, that it was fair to consider the value of the property as a means of ascertaining it.

No exception can be taken to the ruling in this case.

The cases of *Sowers* v. *Earnhart*, 64 N. C. 96 - *Garrett* v. *Smith*, 64 N. C. 93 ; *Cherry* v. *Savage*, 64 N. C. 103 ; *Green*

v. *Brown,* 64 N. C. 553; *Howard* v. *Beatty,* 64 N. C. ᵝ59; *Erwin* v. *N. C. R. R. Co.,* 65 N. C. 79; *Haughton* v. *Meroney,* 65 N. C. 124; *Blackburn* v. *Brooks,* 65 N. C. 413; *Hilliard* v. *Moore,* N. C. 540, ascertain the contract and enforce it, regardless of any actual value of the article.   And in the last of them, an action for the hire of a slave, it is held that "in 1864, Confederate money was the currency of the country, and if there were no express agreement to the contrary, the law would presume that it was solvable in such currency."

This case is decisive of the point now before the Court. which presents, not a *presumptive,* but an *express* contract in 1864, " to be paid in Confederate currency."

An intent presumed by law, cannot, by any known rule of construction, be construed otherwise than an intent expressed in words.

The precise question has been settled by the Supreme Court of the United States States in *Thorington* v. *Smith,* 8 Wall. 1.

In that case the Court, p. 13, speaking of Confederate notes say, "they were the only measure of value which the people had, and their use was a matter of almost absolute necessity. And this use gave them a sort of value, insignificant and precarious enough it is true, but always having a sufficient definite relation to gold and silver, the universal measure of value, so that it was always easy to ascertain how much gold and silver was the real equivalent of a sum expressed in this currency.

We are clearly of opinion, that evidence must be received in respect to such contracts, in order that justice may be done between the parties, and that the party entitled to be paid in these Confederate dollars, can recover their actual value at the time and place of the contract, in lawful money of the United States."

The claim sued on, was a note for *"ten thousand dollars for value received in real estate, sold and conveyed by deed."*

Evidence was offered of the value of the land, and of the currency at the time of the contract. The Court held that the value of the contract was the value of the currency at the time of making it.

DICK, J. The question presented in this case has often been before this Court, has been fully and ably argued by learned counsel, has received our most mature and deliberate consideration, and has been frequently solemnly adjudicated. *Robeson* v. *Brown*, 63 *N. C.* 554. *Hilliard* v. *Moore*, 65 *N. C.*, 540, and the intermediate cases.

The construction which we have given to the ordinance and statutes governing contracts, like the one before us, has been adopted by the legal profession, and has adjusted nearly all the business transactions to which they relate, and their operation has almost ceased with the necessities which called them into existence, and they will soon become obsolete by the effluxion of time. The unfortunate and anomolous condition of things which resulted from the late rebellion called for elevated patriotism and the highest wisdom in our legislators. Our state government and public institutions; our system of law and social policy; our private fortunes and public credit were all damaged or swept away by a deluge of misfortune, and every man seemed to be catching at the planks of the shipwreck, regardless of the welfare of his neighbor. Under such circumstances, the Legislature, acting upon the paramount principle, that *Salus populi suprema lex,* enacted homestead provisions, stay laws, amnesty bills, and other remedial statutes, founded upon the broad principles of equity and justice, and intended for the general public good.

The Legislature may not have regarded with critical accuracy and technical precision, the doctrine about "impairing the obligation of contracts" contained in a constitution which our people had repudiated, and had just made such strenuous efforts to destroy. Our legislators acted in the exercise of their

wise discretion, and their beneficent legislation has been sanctioned by a liberal and enlightened public opinion. The statutes which we are considering have done much good, and will soon cease to have any vitality, and to declare them unconstitutional now, would be like speaking disrespectfully of the honored dead.

The power of the Courts to declare Statutes unconstitutional is a high prerogative, and ought to be exercised with great caution, and they should "not declare a statute void unless the nullity and invalidity of the Act, are placed in their judgment beyond reasonable doubt. A reasonable doubt must be solved in favor of the legislative action, and the Act be sustained." Cooley on Con. lim. 102.

After so many decisions sustained by legislative sanction and public opinion, we think it would be unwise and unjust to declare these remedial statutes to be void, after their purposes have been nearly accomplished, and in a case in which such an inconsiderable amount is in dispute, and the justice of the matter is with the plaintiff.

We listened with attention and respect to the learned and elaborate argument of the defendant's counsel, on account of the distinguished position which he deservedly occupies as a member of the bar.

We have reconsidered the decisions mentioned in the argument, and think that they are uniform and consistent, and a just interpretation of the legislative will.

There is no error.

PER CURIAM.                                        Judgment affirmed.