(Commissioners v. Ballard, 69 N.C. 18; King v. The Railroad, 66 N.C. 277; cited and approved.)
The facts are as follows:
1. That from May, 1884, and ever since then, the plaintiff has been a merchant in the town of Enfield, Halifax county, State of North Carolina.
2. That, during the whole of said time, the defendant was, and still is, a corporation duly chartered and created under the laws of North Carolina, under the corporate name of the Wilmington Weldon Railroad Company, and as such corporation, long before and ever since May, 1884, has been doing business under said charter, as a common carrier *Page 370 
of freight and passengers from Weldon to Wilmington, both of which towns are in the State of North Carolina, and to and from the intermediate stations and depots on said road, of which the town of Enfield is one.
3. That on the 7th day of May, 1884, there was shipped to the plaintiff upon his order, from the city of Richmond, State of Virginia, and consigned to him at Enfield, via the Atlantic Coast Line, its northern terminus being at Weldon, of which Coast Line the defendant was a part, the following articles of freight to-wit; three barrels of (430) flour; and the defendant charged therefor as freight on the same, from Richmond, Va., and received from the plaintiff at said Enfield station, one dollar and thirty-five cents.
4. That said charges and the money so paid, were at that time on the same class of freight, and for the same quantity, to Goldsboro one dollar and sixty-five cents, and to Wilmington seventy-five cents, from Richmond, Va.
5. That the distance from Weldon to Enfield is nineteen miles, from Weldon to Goldsboro seventy-eight miles, from Weldon to Wilmington one hundred and sixty-two miles, the said Enfield, Goldsboro and Wilmington being stations and points of delivery on said road, south of Weldon in said State.
6. That before, during, and after May, 1884, the defendant and the railroads leading from Weldon to Richmond, were connecting lines of railroads at Weldon, N.C. and that the said rates of freight from Richmond to said points on the defendant's road were established by said connecting lines, running from Weldon to Richmond, by their authority in Richmond, Va., but were accepted and acquiesced in by the defendant.
7. That according to said rates of freight, the defendant received of said freight, as its share of the aforesaid rates for transportation from Weldon southward, on the aforesaid freight from Richmond, seventy-two cents to Enfield, and at that time charged and received for the transportation of equal quantities of the same class of freight shipped from Richmond to be transported over its line from Weldon to Goldsboro, seventy-two and six-tenths cents, and to Wilmington forty-six and one-half cents.
8. That said freight was less than a car load.
9. The defendant company's charter was passed by the General Assembly of North Carolina at the session of 18..., and amended at the session of 18..., contained in the Revised Statutes, volume two, (431) pages....., and the laws of North Carolina, which said charter and amendments are made a part of this case. *Page 371 
His Honor upon these faces agreed, gives judgment against the defendant for the amount of the penalty imposed by the statute, and the defendant appealed.
The statute with the violation of which the defendant is charged in the present action, instituted for the recovery of the penalty imposed, is in these words: "It shall be unlawful for any railroad corporation, operating in this State, to charge for the transportation of any freight of any description over its road, a greater amount as toll or compensation, than shall at the same time be charged by it for the transportation of an equal quantity of the same class of freight, transported in the same direction over any portion of the same railroad of equal distance, and any railroad company violating this section shall forfeit and pay the sum of two hundred dollars for each and every offence to any one suing for the same. Nothing in this chapter shall be taken in any manner as abridging the right of any railroad company from making special contracts with shippers of large quantities of freight, to be of not less quantity or bulk than one car load." The Code, § 1966.
It is a wise and well understood rule in interpreting a legislative enactment, whose terms are reasonably capable of two constructions, the one of which is, and the other is not, consistent with the fundamental and paramount law delegating or restraining the authority to enact, to adopt that construction which renders it effectual, rather than that which in whole or in part defeats its operation. Commissioners (432)of Granville v. Ballard, 69 N.C. 18. This is in consonance with another rule, prescribed by the Court for its own action, under which it refuses to declare a statute void, unless the invalidity of the act is, in its judgment, placed beyond a reasonable doubt; and such reasonable doubt must be solved in favor of legislative action. King v.Railroad, 66 N.C. 277; and numerous other cases. Under the guidance of this principle, a fair and reasonable interpretation of the statute may limit its application, not only to railroads operating within the State, but to contracts of carriage to be executed within its limits, and not to such as extend beyond them. An examination of its structure and language tends to sustain a construction thus circumscribing its provisions. It forbids "any railroad corporation operating in this State" from making the unequal charges for freight transported "over *Page 372 its road, or any portion of the same railroad of equal distance," c. No reference is made to transportation beyond the State lines, under a contract of affreightment, nor does any apportionment of the one price for the entire carriage seem to be contemplated or provided for in its terms. Certainly, contracts involving inter-state commerce and traffic, are not specially embraced in its words.
It is not material to inquire in what manner different corporation carriers, who unite to form a single line, continuous in passing through different States, apportion the common fund among them; nor whether the contract is that of each, so that all are responsible for the delinquencies of others; nor whether the successive roads, retaining their several liability, co-operate as forwarding agents for the shipper at their different connecting points; since in every case, the entire transportation is undertaken from the receiving to the delivery terminus of the route, for a single consideration. The essential oneness of the contract remains, and the act does not, at least in terms, touch it. If the toll or compensation be distributable among the companies, upon (433) an arrangement made by themselves, the unity of the contract with the shipper is not affected or impaired, and in no just sense can it be said that the latter is charged, under any agreement with him, the fractional part of the entire compensation which the domestic road receives therefrom, and to such cases the prohibitory words extend.
In this view, the acts complained of do not constitute the offence to which the penalty is affixed. But assuming the act to have a wider scope, and to embrace inter-state carriage as well, under the late decision of the Supreme Court of the United States, as yet unreported, this imputed extra territorial effect is an invasion of the exclusive right vested in Congress "to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." Const. of U.S., Art. I, § 8.
To this ruling, made by the Court to which is committed authority to determine conclusively the consistency of a State enactment with the Constitution and laws of the United States passed in pursuance of it, we give our adherence as a final determination of the point.
The dissenting opinion, proceeding upon the idea that the power thus conferred does not, until exercised, interfere with all State action in the premises, nevertheless concedes that, when exercised, the grant is exclusive. We have not seen the opinion to examine for ourselves, but such is the effect upon the information we possess.
The ruling of the Court is, however, that State interference with inter-state commerce is absolutely forbidden, and the failure of Congress to take any action in the premises is an indication that such commerce shall remain unfettered and free, subject only to the common law. Passengercases, 7 How., 286; Hall v. DeCuir, 95 U.S. 485. *Page 373 
We do not undertake to venture upon the field traversed by the Court, further than to say that the consequences of an opposite view, that permits interfering by State legislation, would be (434) mischievous in the extreme. If one State may interfere, so may every other through which the freight is to be carried, in respect to its own chartered companies, and a succession of hostile enactments might cripple and so embarrass the roads in carrying out the contract, as almost to destroy such commerce, and deprive the country of those beneficial arrangements for transporting from distant points, so general in use, and so conducive to the Nation's prosperity and business. The former is, therefore, wisely committed to a single body, whose regulations may be harmonious and self-consistent.
In either aspect of the case, the action does not lie, and must be dismissed.
Error. Dismissed.
MERRIMON, J., does not concur in the limited operation of the statute as construed in the opinion of the Court.
Cited: McLean v. R. R., 96 N.C. 2; Hodge v. R. R., 108 N.C. 32; Baggv. R. R., 109 N.C. 290; S. v. French, 109 N.C. 725; Sutton v. Phillips,116 N.C. 505; Marble v. R. R., 147 N.C. 56; S. v. Casey, 201 N.C. 628.