### H. A. BAGG v. WILMINGTON, COLUMBIA AND AUGUSTA RAILROAD COMPANY.

*Constitutional Law—Interstate Commerce—Statute—Penalty.*

The statute of North Carolina—*The Code,* § 1967—imposing a penalty upon railroad companies for failure to ship freight within five days, is operative upon freights to be shipped to points outside the State as well as those to be delivered within its territory; and is not in conflict with the power conferred by the Federal Constitution upon Congress to regulate commerce among the States of the Union.

This was a CIVIL ACTION, brought to recover a penalty imposed by § 1967 of *The Code,* for detention of freight more than five days after delivery for shipment without the consent of the consignor, tried before *Armfield, J.,* at September Term, 1890, of the Superior Court of NEW HANOVER County.

The termini of the defendant's road are the one in North Carolina and the other in South Carolina. The goods were consigned by a shipper in Wilmington, North Carolina, to a person at a station on defendant's line in South Carolina.

The Court intimated an opinion that the statute was unconstitutional as to freight shipped beyond the limits of the State of North Carolina, and that the plaintiff could not recover. Plaintiff thereupon submitted to a judgment of nonsuit and appealed.

No counsel for plaintiff.
*Mr. J. Davis,* for defendant.

AVERY, J.: The power to regulate commerce among the several States, as well as with foreign nations, was delegated to the Federal Government in pursuance of a preconceived purpose on the part of the leading representatives of public opinion, to provide for and promote the free and unrestricted sale and interchange of commodities between the States. It appears from contemporaneous history of the condition of the country, especially from the Journals of the General Assemblies of the States and of the Federal Convention, that there was a deep-seated desire in all parts of the Union to establish a uniform system of commercial regulation, such as would prohibit one State from imposing burdens upon the business of citizens of other States, whether by a tax upon their persons or property *in transitu,* on their goods when offered for sale, or by an impost tax. 1 Elliott's Debates, 140; 5 *Ibid.,* 540.

The earlier cases that gave rise to the construction of this clause of the Constitution were chiefly controversies as to the right of a State to levy a tax upon passengers or products passing through and along its highways to a market beyond its borders. The test of constitutionalty, to which every doubtful State statute was subjected, was involved in the inquiry whether its enforcement would tend to trammel the trade between citizens of different States or embarrass them in passing from one to another.

The idea was crystalized by Justice STRONG in the definition of regulating commerce, given by him in *Railroad* v. *Husen,* 95 U. S., 470, to-wit: "Transportation is essential to commerce, or rather it is commerce itself; and *every obstacle to it, or burden laid upon it by legislative authority, is regulation.*" *Ward* v. *Maryland,* 12 Wall., 418; Case of State Freight Tax, 15 Id., 232; *Wilton* v. *State of Missouri,* 91 U. S., 275; *Henderson* v. *Mayor of New York,* 92 Id., 259; *Chy Lung* v. *Freeman,* Id., 275.

" Commerce (said Chief Justice MARSHALL) undoubtedly is traffic, but it is something more, it is intercourse."

The police power is the authority to establish such rules and regulations for the conduct of all persons as may be conducive to the public interest, and under our system of government is vested in the Legislatures of the several States of the Union, the only limit to its exercise being that the statute shall not conflict with any provision of the State Constitution, or with the Federal Constitution, or laws made under its delegated powers. *Martin* v. *Hunter's Lessee*, 1 Wheaton, 326; *State* v. *Moore*, 104 N. C., 714; *State Tax on Railroad Gross Receipts*, 15 Wall., 2841. So long as the State legislation is not in conflict with any law passed by Congress in pursuance of its powers, and is merely intended and operates in fact to aid commerce and to expedite instead of hindering the safe transportation of persons or property from one commonwealth to another, it is not repugnant to the Constitution of the United States, and will be enforced either as supplementary to partial Federal statutes relating to the same subject, or in lieu of such legislation, where Congress has not exercised its powers at all. *Morgan S. S. Co.* v. *Louisiana*, 118 U. S., 455; *Train* v. *Boston Disinfecting Co.*, 144 Mass., 523; *Smith* v. *Alabama*, 124 U. S., 465; *Railroad* v. *Alabama*, 128 U. S., 96; *Wilton* v. *Missouri*, 91 U. S., 275 ; *Railroad* v. *Fuller*, 17 Wall., 560.

The power of Congress over commerce between the States is, as a general rule, exclusive, and its inaction is equivalent to a declaration that it shall be free from any restraint which it has the right to impose, except by such statutes as are passed by the States for the purpose of facilitating the safe transmission of goods and carriage of passengers, and are not in conflict with any valid Federal legislation. Cooley's Const. Lim., 595; *County of Mobile* v. *Kimball,* 102 U. S., 697 ; *Wilson* v. *McNamee*, 102 U. S., 572; *Wilson* v. *B. B., &c., Co.*,

2 Peters, 245; *Pound* v. *Turck*, 95 U. S., 459; *Turner* v. *Maryland*, 107 U. S., 38; *Morgan S. S. Co.* v. *Louisana, supra*.

Familiar instances of statutes falling within the foregoing exception are found in those relating to harbor pilotage, beacons, buoys, the improvement of navigable waters, the examination as to fitness of engineers and other railroad employees, and which are discussed by the Courts in the cases cited above.

The validity of these and other State laws, which relate directly to, or indirectly affect commerce between the States, has been sustained upon the ground either that the particular statute upon its face appeared to have been passed for the purpose of expediting the safe transportation of persons and property, or in the exercise of police powers which it is more convenient to leave subject to local legislation, such as the building of bridges over inland navigable streams.

Where the manifest tendency of enforcing such laws has been, as far as could be foreseen from their terms, to impede the free and expeditious conduct of commerce over inter-State lines by land or water, they have been declared repugnant to the organic laws and void, even where Congress had failed to legislate on the branch of the subject to which they relate. The futile attempts by State legislatures, either to give exclusive privileges to a particular telegraph company, or to subject telegraph companies generally to such license tax or tax on messages as would imply the right to destroy their business by burdening them with such imposts, illustrate the view which we have submitted, that where Congress has not exercised a police power, comprehended under the general authority to regulate commerce, the States may exercise the power to aid, but not to impede or obstruct it. *Pensacola Co* v. *W. U. Tel. Co.*, 96 U. S., 1; *Tel. Co* v. *Texas*, 105 U. S., 460; *Leloup* v. *Port of Mobile*, 127 U. S., 640.

The Supreme Court of the United States has also, in a long line of cases, passed upon the power assumed by some of the

States to impose a tax on persons or goods *in transitu* to another State, a license tax upon travelling salesmen, who might offer to sell within their borders merchandise manufactured in or commodities shipped from another State, before such articles of commerce should become intermingled with its own products. These adjudications, within the last decade, have marked much more clearly the line to which Congress may rightfully claim exclusive authority to legislate, and have, also, indicated more definitely the limit to which the States may still cross that boundary in the exercise of permissive police power. The controlling principle which pervades all of them is, that such legislation by the States is inhibited as impedes, obstructs or controls commerce, or comes in conflict with some statute passed by Congress to regulate it. *Robbins* v. *Shelby Taxing District*, 120 U. S., 489; *McCall* v. *California*, 136 U. S., 104; *Asher* v. *Texas*, 128 U. S., 129; *Lyng* v. *Michigan*, 135 U. S., 166; *Walling* v. *Michigan*, 116 U. S., 446; *Inman S. Co.* v. *Tinker*, 94 U. S., 238; *In re* Rahm, 140 U. S., 545; *Bowman* v. *Chicago & R. Co*, 125 U. S., 465; *Philadelphia S. Co.* v. *Pennsylvania*, 122 U. S, 326.

In *Railroad* v. *Husen, supra,* Justice STRONG, delivering the opinion, said: "Many Acts of a State may, indeed, affect commerce without amounting to a regulation of it in the constitutional sense of the term. And it is sometimes difficult to distinguish between that *which merely affects or influences,* and that which *regulates* or furnishes a rule of conduct * * * While we unhesitatingly admit that a State may pass sanitary laws and laws for the protection of life, liberty, health or property within its borders; while it may prevent animals suffering from contagious or infectious diseases, or convicts from entering the State; while, for the purpose of self-protection, it may establish quarantine and reasonable inspection laws, it may not interfere with transportation into or through the State beyond what is absolutely necessary for its self-protection. It may not, under the cover of exerting its police

power, *substantially prohibit or burden either foreign or inter-State commerce.*"

In *Wilton* v. *State of Missouri*, 91 U. S., 282, it is said "the fact that Congress has not seen fit to prescribe any specific rules to govern inter-State commerce does not affect the question. Its inaction on this subject, when considered in reference to its legislation with respect to foreign commerce, is equivalent to a declaration that inter-State commerce shall be *free* and *untrammelled.*"

In *W. U. Tel. Co.* v. *Pendleton*, 122 U. S., 358, Justice FIELD says: " In these cases the supreme authority of Congress over the subject of commerce by the telegraph with foreign countries or among the States, is affirmed, *whenever that body chooses to exert its power*, and it is also held, *that the State can impose no impediments to the freedom of that commerce.*"

In *Walling* v. *Michigan*, 116 U. S., 446, Justice BRADLEY, speaking for the Court, says: " We have repeatedly held, that *so long as Congress does not pass any law to regulate commerce among the several States, it thereby indicates that such commerce shall be free and untrammelled.*" *Phom* v. *Houston*, 114 U. S., 631.

When we come, therefore, to the application of the authorities to the case at bar, the question arises at the threshold of the enquiry, whether the statute, which is drawn in question, would, in its enforcement, tend to trammel or obstruct the trade carried on between the States, and not whether it might remotely influence it.

The statute (*The Code*, § 1967), which was declared to be repugnant to the Constitution of the United States in the Court below, is as follows:

" It shall be unlawful for any railroad company operating in this state to allow any freight they may receive for shipment to remain unshipped for more than five days, unless otherwise agreed between the railroad company and the shipper, and any company violating this section shall forfeit

and pay the sum of twenty-five dollars for each day said freight remains unshipped, to any person suing for the same."

Neither the Act of Congress, passed in 1887, to regulate commerce, nor the amendatory Act of 1889, prescribes the time or the manner in which freight received for shipment to another State shall be forwarded; nor do these statutes clothe the Commission with power to regulate the time of shipment. Therefore, if the defendant company, whose line extends into the section of our State where many farmers are engaged in raising vegetables for sale in Northern cities, should, for the purpose of stimulating production in a State further South and more remote from the markets, fail to furnish transportation to this class of persons, known as "truckers," for more than five days, and thereby give to the planters of South Carolina the exclusive benefits of the markets till vegetables of the same kind, then mature here, should ripen in Virginia, the producers would suffer loss without adequate remedy, because no provision is made in any national law for preventing such secret preference. It would be almost impossible, in the very nature of things, to prove the existence of such a purpose, though in fact entertained and acted upon by some agent in control of the through line, or in any way to show that, in a system so extensive and complicated, the injury was due to any cause other than undesigned and unavoidable accident. In the same way, in the absence of a State statute imposing a penalty or any other local legislation on the subject, facilities for shipment may be furnished more promptly to one town or station than to another neighboring one, and thereby its business may be injured and its improvements retarded. No other compulsory law could be conceived of that is calculated to operate so uniformly in ensuring the shipment of both local and inter-State products without preference to one class of shippers over another, or to one station over a neighboring one. If the evil to be remedied, were the habit

of giving the preference to through freight consigned to another State over local shipments to points within the State, where is the power to compel fairness lodged ? The power delegated to Congress to control through shipments would not warrant the enactment of a law goii g further than to prohibit unfairness and ensure promptness in transporting goods shipped to another State. If, then, the authority of the State is confined to such legislation as will apply to and insure uniformity and dispatch in forwarding freight to points within its own territory, how could the evil of giving advantage either to the through or local shipper be corrected? Surely, as between the Federal Legi-lature acting under well-defined and delegated powers and the States that have retained and may exercise all the residuary authority to provide by statute for the protection of its citizens, subject only to the restraints of their own organic law, the right should be conceded to the latter, without question.

It is settled that the statute under consideration is valid, as to the transportation of freight to points within the State, and so far may be enforced in the State Courts, just as the license taxes could be collected from persons selling the products of the State that imposed them, and within its limits.

If we concede then that each power, State and National, is sovereign and exclusive within its own domain in dealing with the problem of expediting shipments, we have located the authority to regulate the conduct of each class of con-signments *inter sese*, and it might be exercised, if the statutes so provided, by two Railroad Commissions supplementing each other. But when the interests of State and inter-State traders conflict, and such regulation is needed as will prevent corporations from giving undue preference to either over the other, under this theory it would seem that the States have neither delegated nor reserved the right to afford such relief by appropriate legislation, but that in the transfer

of delegated authority to the Federal Union, this power, so conducive, if not essential, to the public weal, has been lodged *in nubibus* beyond the reach of either.  There is nothing upon the face of the statute, as in that discussed in *Robbins* v. *Shelly Taxing District, supra*, to show that it was intended to operate or does operate as a restriction upon the inter State commerce.  On the contrary, the enforcement of the penalty is at once a stimulus and a compensation, placed within the reach of every one who consigns his freight to another State, and he may avail himself of its aid as an incentive to promptness to the same extent as the local shipper may do.  In fact, the controversy before us has its origin in a failure to ship goods to another State, and we are asked to declare the law invalid when its aid has been invoked to expedite inter-State commerce, and to thereby leave the defendant at liberty to embarrass such traffic, not by legislation, but by inaction or unfair conduct.

It was contended, on the argument, that a State could not compel railroad companies, doing business between States, to provide cars for removing freight within a given period without risk of impairing the facilities for shipment from the adjacent State by withdrawal of the company's cars from it. That is an evil that may be met and provided against by the enactment of a similar statute in the adjacent State, and thus forcing the company to provide an adequate supply of cars to remove its freight without delay.  Besides, the same result would as naturally follow, if the statute were limited in its operations to compelling the removal of freights consigned to points within the State, and if the argument were allowed to influence us at all, we would be driven to the conclusion that the penalty cannot be recovered, even where the agreement is to ship the freight to a station in North Carolina.  Cars cannot be provided for the shipment of local freight if they are moved to particular points not to fulfil a duty due to persons who have been induced by the invita-

tion of the carriers to entrust goods to their care, but to avoid the consequences of disregarding a penal statute, without influencing to some extent the business of the whole line.

Where these arteries of trade have termini in different States, or where they lie entirely within a single State, but constitute a part of a long through-line formed for the purpose of competing for business with other similar lines, it would be as certainly impossible to interfere in any way with any branch of the system, whether located entirely within one or situate in two States, without to some extent affecting the whole line, as it would be to check the flow of blood in a vein of one's arm, or to temporarily open the vein, without influencing the action of the main artery of that arm.

This case illustrates the distinction drawn by Justice STRONG in *Railroad* v. *Husen, supra,* between a State statute that affects or influences incidentally even to the slightest extent, the transportation of commodities from one State to another, and one that is palpably intended to embarrass such commerce, and trammel it by restrictions, especially where, in addition, there is a plain discrimination in favor of the local trade or production.

Neither the clause of the Constitution which we have considered, nor any other, has been construed to interfere with "the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity." *Barber* v. *Connolly,* 113 U. S., 27; *Maylor* v. *Kansas,* 123 U. S., 623. The palpable purpose of the Legislature, in enacting our statute, was to stimulate trade and develop the resources of its people. It throws the ægis of State protection alike over freight consigned under the care of the State and that of which the general government has the right of supervision. The requirements of a State law that locomotive engineers be

examined as to the condition of their eyes to determine whether they were color-blind and as to fitness generally, and required to have a license, have been declared valid under the general authority to protect life, health and property; yet such statutes interfere with and affect, but do not obstruct, commerce between the States. *Smith* v. *Alabama, supra; N. C. & St. L. R. R.* v. *Alabama,* 128 U. S., 96. In *Smith* v. *Alabama,* the Court said: "If the State has power to secure to passengers conveyed by common carriers in their vehicles of transportation a right of action for the recovery of damages occasioned by the negligence of the carrier in not providing safe and suitable vehicles or employees of sufficient skill and knowledge, or in not properly conducting or managing the act of transportation, why may not the State also impose, on behalf of the public, as an additional means of prevention, *penalties for the non-observance of these precautions?*"

Justice FIELD, in delivering the opinion of the Court in *N. C. &c., R. R.* v. *Alabama, supra,* said: "It is conceded that the power of Congress to regulate inter-State commerce is plenary; that, as incident to it, Congress may legislate as to the qualifications, duties and liabilities of employees and others on railway trains engaged in that commerce; that such legislation will supersede any State action on the subject. *But until such legislation is had, it is clearly within the competency of the States to provide against accidents on trains whilst within their limits.*"

If it is not only the right but the duty of State Legislatures to provide for the safety of the persons alike of its own citizens and those of other States passing across its territory on trains, by such legislation as Congress had plenary power to pass if it had chosen to exercise that power, it would seem doubly due to all persons interested in the traffic conducted along the railway lines which cross it, that their property entrusted to the corporations owning them should

109 — 19

be protected by proper legislation, especially if the power of Congress in the premises is not plenary, and there is no authority lodged anywhere except in the States to pass a statute that will operate uniformly and on all classes of freight.

It is true that § 1967 has been modified so as to give persons injured by failure to ship within five days, the right to recover double the amount of damage actually sustained. Laws 1891, ch. 520. But by its terms the statute does not apply to actions pending in the Courts so as to affect the right to recover the prescribed penalty.

We might add that though Congress has plenary authority over whisky stored in a Government distillery and in the custody of a gauger, it is, nevertheless, larceny to steal such whisky. *State* v. *Harmon*, 104 N. C., 792; *State* v. *Cross*, 101 N. C., 770; *State* v. *Bishop*, 98 N. C., 773.

In like manner, National banks are the creatures of the general Government and subject to such supervision and regulation as Congress may provide for, yet the State may protect the property of such banks by punishing the forger of a note to defraud it. *Cross* v *North Carolina*, 132 U. S., 132.

Where, therefore, the State Legislature, without discrimination, passes a law which operates uniformly in aid of domestic and inter-State trade alike, and Congress has not acted, or has not the authority to afford so complete a remedy for the evil as the State Legislature, there can be no question about the validity of such legislation or the duty of the State Courts to enforce it.

McGwigan's case, 95 N. C., 432, presented a question widely different from that raised by this appeal. That case involved a construction of § 1966 of *The Code*, which was an Act, by its terms, prohibiting the exaction of a greater charge for hauling freight a shorter distance over a given line than is charged by the same carrier for transporting freight of the same class to a greater distance in the same direction. If

the statute had been enforced as to shipments beyond the limits of the State it would have been clearly an invasion of the exclusive domain of Congress, and would have provided for one of the most flagrant abuses on the part of carriers of goods shipped from one State to another that has been remedied by the more recent Act of Congress. The Court there conceded that the regulation of charges was operative within, though not beyond, the boundaries of the State. The passage of that statute was, as to its operation beyond our lines, an undisguised attempt to interfere with commerce by regulating charges, and not an effort to aid such traffic by speeding shipments to their appointed destination.

We think that there was error in the ruling of the Court below, that the plaintiff could not recover because the goods were consigned to a point beyond the limits of the State, and a new trial must, therefore, be granted.

New trial.