## MORRIS-SCARBORO-MOFFITT COMPANY v. SOUTHERN EXPRESS COMPANY.

### (Filed 27 November, 1907).

1. **Railroads—Penalty Statutes—Transport—Construction—Discrimination—Payment of Debt—Constitutional Law.**

Section 2634, Revisal, imposing a penalty of $50 on common carriers on failure, for more than ninety days after demand duly made, to adjust and pay a valid claim for damages to goods shipped from points without the State, is not in violation of Article IV, section 1, of the Constitution of the United States, in denying to common carriers the equal protection of the laws nor in making arbitrary discrimination against them. The penalty imposed by the said section is not for the nonpayment of a debt, in the ordinary acceptation of that term, but the same bears a reasonable relation to the business of common carriers, and is in direct enforcement of the duties encumbent on them by law.

2. **Same—Interstate Commerce, Aid to.**

Revisal, sec. 2634, is not repugnant to or in contravention of Article I, section 8, of the Constitution of the United States, conferring upon Congress the power to regulate commerce between the States. The penalty is in direct enforcement of the duties encumbent on the carriers by law to adjust and pay for damages due to their negligence; is imposed for a local default arising after the transportation has terminated; is not a burden on interstate commerce, but in aid thereof, and, in the absence of inhibitive congressional legislation, the matter is the rightful subject of State legislation.

3. **Same—Failure to Pay Claim for Damages.**

When it appears that defendant, having charge of the goods as common carrier, shipped from Cincinnati, O., to Ashboro, N. C., delivered same to plaintiff's consignees at the point of destination in a damaged condition, the package having been broken open and part of the goods taken therefrom; that claim for damages has been formally made, and defendant has failed to pay or adjust same for more than ninety days, and that the full amount of the claim was established on the trial, the penalty of $50 imposed by section 2634 will attach as a conclusion of law, and judgment therefor in favor of plaintiff should be affirmed.

CIVIL ACTION, tried on appeal from a justice's court before *Moore, J.,* and a jury, at March Term, 1907, of the Superior Court of RANDOLPH County.

There was evidence tending to show that defendant company, having undertaken, in the line of its duty as common carrier, to deliver certain goods to plaintiff, at Ashboro, N. C., the same having been shipped from Cincinnati, O., in breach of its contract and agreement delivered only part of said goods, the package in which they were shipped having been broken open, while in defendant's custody, and part of the goods taken; that, after said package had arrived at Ashboro and been delivered to plaintiff in its damaged and defective condition, plaintiff duly filed a claim for damage, pursuant to statute, and defendant wrongfully failed and refused to adjust the claim for more than ninety days, etc., the claim being, in amount, as follows:

"ASHBORO, N. C., Sept. 25, 1906.

*Bought of* MORRIS-SCARBORO-MOFFITT CO.,

WHOLESALE AND RETAIL DEALERS IN DRY GOODS, NOTIONS, GROCERIES AND GENERAL MERCHANDISE.

| | |
|---|---|
| To one (1) overcoat | $20.00 |
| To one (1) overcoat, less 10 per cent | 18.00 |
| To one (1) coat and trousers | 21.75 |
| To part express | .21 |

$59.96"

Issues were submitted and responded to by the jury:

"NORTH CAROLINA—Randolph County.

Superior Court, March Term, 1907.

"E. H. Morris, P. H. Morris, W. J. Scarboro, B. Moffitt, M. A. Moffitt, E. L. Moffitt and E. Moffitt, trading as Morris-Scarboro-Moffitt Company, *v.* Southern Express Company.

"1. Is the defendant indebted to the plaintiff on account of loss, as alleged? If so, in what sum?" Answer: "Yes; $59.96 and interest from 26 September, 1906."

"2. Was the claim of plaintiff filed ninety days before the bringing of this suit?"    Answer: "Yes."

There was judgment on the verdict for the amount of the loss and for the penalty of $50 imposed by the statute, and defendant excepted and appealed, and assigned for error that the statute imposing the penalty (section 2634, Revisal 1905) was invalid as to interstate shipments because in contravention of Article I, section 8, of the Constitution of the United States, conferring upon Congress the power to regulate commerce with foreign nations and among the several States and with the Indian tribes.

*Elijah Moffitt* for plaintiff.
*John A. Barringer* and *T. H. Calvert* for defendant.

HOKE, J., after stating the case: The statute in question enacts: "That every claim for loss of or damage to property while in possession of a common carrier shall be adjusted and paid within sixty days in case of shipments wholly within this State, and within ninety days in case of shipments from without the State, after the filing of such claim with the agent of such carrier at the point of destination of such shipment or the point of delivery to another common carrier: *Provided,* that no such claim shall be filed until after the arrival of the shipment, or of some part thereof, at the point of destination, or until after the lapse of a reasonable time for the arrival thereof.    In every case such common carrier shall be liable for the amount of such loss or damage, together with interest thereon from the date of the filing of the claim therefor until the payment thereof.    Failure to adjust and pay such claim within the periods, respectively, herein prescribed shall subject each common carrier so failing to a penalty of $50 for each and every such failure, to be recovered by any consignee aggrieved, in any court of competent jurisdiction: *Provided,* that, unless such consignee recover in .such action the full amount claimed, no penalty shall be recovered, but only the

actual amount of the loss or damage, with interest, as afore-said. Causes of action for the recovery of the possession of the property shipped, for loss or damage thereto, and for the penalties herein provided for may be united in the same complaint."

It is established that the defendant company had charge of the goods, having undertaken to transport and deliver same as common carriers; that, when delivered to plaintiff by defendant, the package had been broken open and goods to the value of $59.75 had been taken out, which, with the proportional express charge of twenty-one cents, caused damage to plaintiff, by reason of negligent default in the contract of carriage, to the amount of $59.96; that formal demand for this exact amount had been made and filed with defendant's agent, and the company had failed and refused to pay the same for more than ninety days. According to the provisions of the statute, therefore, the penalty would attach as a conclusion of law from the verdict and facts admitted, and if the statute is valid the recovery by plaintiff must be sustained. We have held at the present term, in the case of *Efland v. Railroad* (the defendant's appeal), that, as a general rule, the State or government having control of the matter had the right to establish certain regulations for these public service corporations, and to enforce the same by appropriate penalties, and that in the fixing of such penalties the right of classification was referred largely to the legislative discretion, citing the case of *Tullis v. Railway,* 175 U. S., 348, and other authorities referred to and approved in that decision, the limitation on this right of classification being that established in the case of *Ellis v. Railway,* 165 U. S., 151, as follows: "The mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and in all cases it must appear, not merely that a classification has been made, but, also, that it has been made on some reasonable ground—something which bears a just and proper re-

lation to the attempted classification and is not a mere arbitrary selection."

The statute construed and upheld in *Efland's case* was section 2642, Revisal, imposing a penalty for wrongfully failing to return the amount of an overcharge; but the principle applies here, and shows that the statute now before us (section 2644) is not open to the objection sustained in *Ellis' case, supra,* but is a penalty, moderate in amount, imposed only after giving opportunity for investigation, that does not attach unless full recovery is had in accordance with demand made, and, moreover, is in reasonable and direct enforcement of the duties encumbent upon common carriers, and imposed alike on all members of a given class. The statute, therefore, is not subject to the criticism that it denies to defendant the equal protection of the law, and we do not understand that the defendant insists on this objection. It is strongly urged, however, that the law is in violation of Article I, section 8, of the Federal Constitution, conferring on Congress the right to regulate commerce among the several States. The decisions of the Supreme Court of the United States have uniformly held that under this clause of the Constitution commerce between the States shall be free and untrammeled by any regulations which place a burden upon it, and these decisions also hold that, in the absence of inhibitive congressional legislation, a State may enact and establish laws and regulations on matters local in their nature which tend to enforce the proper performance of duties arising within the State, and which do not impede, but aid and facilitate, intercourse and traffic, though such action may incidentally affect interstate commerce. Calvert on Regulation of Commerce, pp. 76, 152, 159.

A case in this Court (*Harrill v. Railroad,* 144 N. C., 532) well illustrates the distinction between the two positions, and the decision in that case is an apt authority, we think, in support of the present judgment. In *Harrill's case* the consignee

demanded his goods, held by the carrier at the point of desti-
nation, tendering the lawful charges due for the shipment and
defendant's agent wrongfully refused to deliver. A recovery
by consignee of a penalty imposed by a State statute for such
wrong was sustained, and it was held as follows: "A railroad
company owes it as a common-law duty to deliver freight upon
tender of lawful charges by the consignee, and, in the absence
of a conflicting regulation by Congress, Revisal, sec. 2633,
imposing a penalty upon default of the railroad company
therein, is constitutional and valid, and is an aid to, rather
than a burden upon, interstate commerce." The same doc-
trine was announced and upheld in the case of *Baggs v. Rail-
road,* 109 N. C., 279, as applied to a penalty imposed on the
carrier for failure to start an interstate shipment within the
time required by law. In that well-sustained opinion *Mr.
Justice Avery,* for the Court, said: "The police power is the
authority to establish such rules and regulations for the con-
duct of all persons as may be conducive to the public interest,
and under our system of government is vested in the Legisla-
tures of the several States of the Union, the only limit to its
exercise being that the statute shall not conflict with any pro-
vision of the State Constitution or with the Federal Constitu-
tion or laws made under its delegated powers. *Martin v.
Hunter's Lessee,* 1 Wheaton, 326; *State v. Moore,* 104 N. C.,
714; *State Tax on Railroad Gross Receipts,* 15 Walt., 2841.
So long as the State legislation is not in conflict with any law
passed by Congress in pursuance of its powers, and is merely
intended and operates, in fact, to aid commerce and to expe-
dite instead of hinder the safe transportation of persons
or property from one Commonwealth to another, it is not re-
pugnant to the Constitution of the United States, and will be
enforced, either as supplementary to partial Federal statutes
relating to the same subject, or in lieu of such legislation,
where Congress has not exercised its powers at all. *Morgan
Steamship Co. v. Louisiana,* 118 U. S., 455; *Train v. Boston*

*Disinfecting Co.,* 144 Mass., 523; *Smith v. Alabama,* 124 U. S., 465; *Railroad v. Alabama,* 128 U. S., 96; *Wilton v. Missouri,* 91 U. S., 275; *Railroad v. Fuller,* 17 Wall., 560. The power of Congress over commerce between the States is, as a general rule, exclusive, and its inaction is equivalent to a declaration that it shall be free from any restraint which it has the right to impose, except by such statutes as are passed by the States for the purpose of facilitating the safe transmission of goods and carriage of passengers, and are not in conflict with any valid Federal legislation. Cooley's Const. Lim., 595; *County of Mobile v. Kimball,* 102 U. S., 697; *Wilson v. McNamee,* 102 U. S., 572; *Wilson v. B. B., etc., Co.,* 2 Peters, 245; *Pound v. Turck,* 95 U. S., 459; *Turner v. Maryland,* 107 U. S., 38; *Morgan Steamship Co. v. Louisiana, supra.*"

A like decision has been made on a statute similar to the one we are now considering in our neighboring State of South Carolina (*Porter v. Railway,* reported in 63 S. C., 169), where it was held as follows: "The act (22 Stat., 443) providing a penalty on common carriers for failure to pay or to refuse to pay damages, etc., to freight within sixty days, does not conflict with those sections of the State and Federal Constitutions providing for the equal protection of the laws to all, nor with the interstate commerce clause of the Federal Constitution or acts of Congress relating thereto." These opinions are in accordance with the principle established by numerous and well-considered decisions of the United States Supreme Court, which are alone authoritative on such questions. *Mobile v. Kimball,* 102 U. S., 691; *Smith v. Alabama,* 124 U. S., 465, 476; *Telegraph Co. v. James,* 162 U. S., 650; *Hennington v. Georgia,* 163 U. S., 299; *Railway v. Solan,* 169 U. S., 133, 137; *Railway v. Florida,* 203 U. S., 261. In *Smith v. Alabama, supra,* Mr. *Justice Mathews,* for the Court, said: "It is among these laws of the States, therefore, that we find provisions concerning the rights and duties of the common

carriers of persons and merchandise, whether by land or by water, and the means authorized by which injuries resulting from the failure properly to perform their obligations may be either prevented or redressed. A carrier, exercising his calling within a particular State, although engaged in the business of interstate commerce, is answerable according to the laws of the State for acts of nonfeasance or misfeasance committed within its limits. If he fail to deliver goods to the proper consignee at the right time or place, he is liable in an action for damages under the laws of the State in its courts; or, if by negligence in transportation he inflicts injury upon the person of a passenger brought from another State, a right of action for the consequent damage is given by the local law. In neither case would it be a defense that the law giving the right to redress was void as being an unconstitutional regulation of commerce by the State. This, indeed, was the very point decided in *Sherlock v. Alling,* above cited." In *Railway v. Solan, supra, Mr. Justice Gray,* for the Court, said: "A carrier, exercising his calling within a particular State, although engaged in the business of interstate commerce, is answerable according to the law of the State for acts of nonfeasance or of misfeasance committed within its limits. If he fails to deliver goods to the proper consignee at the right time and place, or if by negligence in transportation he inflicts injury upon the person of a passenger brought from another State, the right of action for the consequent damage is given by the local law. It is equally within the power of the State to prescribe the safeguards and precautions foreseen to be necessary and proper to prevent by anticipation those wrongs and injuries which, after they have been inflicted, the State has the power to redress and to punish. The rules prescribed for the construction of railroads and for their management and operation, designed to protect persons and property otherwise endangered by their use, are strictly within the scope of the local law. They are not in themselves regulations

of interstate commerce, although they control in some degree the conduct and the liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce and as a rightful exercise of the police power of the State to regulate the relative rights and duties of all persons and corporations within its limits."

The case before us comes clearly within the principle of these decisions. The penalty is imposed, not directly upon interstate commerce itself, or during the transportation of the goods, but it arose by reason of default on the carrier's part after the transportation had terminated, and is in enforcement of the duty encumbent upon it by the law to adjust and pay for damages arising by reason of its negligent default. The penalty is in no sense a burden on intercourse and traffic between the States, but it is in aid of such traffic, and, in the absence of congressional legislation to the contrary, is a proper subject of State regulation.

We were referred by counsel to cases of *Railway v. Murphey,* 196 U. S., 195; *Railway v. Mayes,* 201 U. S., 321; *McNeal v. Railway,* 202 U. S., 543, but we do not think that these decisions are in conflict with the views we have held to be controlling in the case before us. As we understand them, they all proceed upon the idea, not that the regulations in question were void because they affected in some way interstate commerce, but because they interfered directly with intercourse and traffic between the States and were of a character that imposed an undoubted and distinct burden upon them. A careful perusal of either of these cases will show this to be the correct deduction from the decisions. Thus *Mr. Justice Brown,* in *Mayes' case, supra,* on page 328, says: "The exact limit of lawful legislation upon this subject cannot in the nature of things be defined. It can only be illustrated from the decided cases by applying the principles therein enunciated, determining from these whether in the particular case

the rule be reasonable or otherwise. That States may not burden instruments of interstate commerce, whether railways or telegraphs, by taxation, by forbidding the introduction into the State of articles of commerce generally recognized as lawful, or by prohibiting their sale after introduction, has been so frequently settled that a citation of authority is unnecessary. Upon the other hand, the validity of local laws designed to protect passengers or employees, or persons crossing the railroad tracks, as well as other regulations intended for the public good, are generally recognized." And on page 329: "While there is much to be said in favor of laws compelling railroads to furnish adequate facilities for the transportation of both freight and passengers, and to regulate the general subjects of speed, length and frequency of stops, the heating, lighting and ventilation of passenger cars, the furnishing of food and water to cattle and other live stock, we think an absolute requirement that a railroad shall furnish a certain number of cars at a specified day, regardless of every other consideration, except strikes and other public calamities, transcends the police power of the State and amounts to a burden upon interstate commerce. It makes no exception in cases of sudden congestion of traffic, an actual inability to furnish cars by reason of their temporary and unavoidable detention in other States or in other places within the same State. It makes no allowance for interference of traffic occasioned by wrecks or other accidents upon the same or other roads, involving a detention of traffic, the breaking of bridges, accidental fires, washouts or other unavoidable consequences of heavy weather." And on page 330: "Although the statute in question may have been dictated by a due regard for the public interest of the cattle raisers of the State, and may have been intended merely to secure promptness on the part of the railroad companies in providing facilities for speedy transportation, we think that in its practical operation it is likely to work a great injustice to the roads and to impose heavy penal-

ties for trivial, unintentional and accidental violations of its provisions, when no damages could actually have resulted to the shippers." And again on page 331: "While railroad companies may be bound to furnish sufficient cars for their use in usual and ordinary traffic, cases will inevitably arise where, by reason of an unexpected turn in the market, a great public gathering, or an unforeseen rush of travel, a pressure upon the road for transportation facilities may arise which good management and a desire to fulfill all its legal requirements cannot provide for, and against which the statute in question makes no allowance. Although it may be admitted that the statute is not far from the line of proper police regulations, we think that sufficient allowance is not made for the practical difficulties in the administration of the law, and that, as applied to interstate commerce, it transcends the legitimate powers of the Legislature."

These citations, we think, give clear indication that we have correctly interpreted the opinion and that the decision in no way conflicts with the disposition we have made of the present case.

We find no error in the record to the defendant's prejudice, and the judgment below is affirmed.

No Error.