YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY v. GREEN-
WOOD GROCERY COMPANY.

[51 South. 450.]

COMMERCE. *Means and methods of regulation. Interstate. Railroad.
Demurrage. Delayage. Railroad commission. Rules.*

The state railroad commission may fix reciprocal demurrage rules,
making the carrier liable for delays in delivery of interstate
shipments after arrival at the point of consignment, imposing no
additional duty on the carrier, but merely compelling the ful-
fillment of a duty, an incident to the contract of carriage; such
rules are in aid of commerce rather than an obstruction to it,
and operate after the transportation is completed.

FROM the circuit court of Leflore county.

HON. SYDNEY SMITH, Judge.

The railroad company, appellant, was plaintiff in the court
below; the grocery company, appellee, was defendant there.
From a judgment in favor of the plaintiff, for a much less
sum than the demand, plaintiff appealed to the supreme court.

The railroad company sued the grocery company for $67,
claimed as demurrage on cars. The grocery company pleaded
an alleged off-set of $58, claimed as reciprocal demurrage.
Judgment for $9 having been rendered in favor of the rail-
road company against the grocery company, the railroad com-
pany appealed to the circuit court. In the circuit court the
case was tried on an agreed statement of facts, as follows:

"(1) The Yazoo & Mississippi Valley Railroad Company,
plaintiff, is a corporation and common carrier handling inter-
state railroad shipments into and out of Greenwood, Miss.,
with a switchyard and side tracks in Greenwood, and a side
track running to the warehouse of the Greenwood Grocery
Company, which is situated on the right of way and grounds of
the Yazoo & Mississippi Valley Railroad Company.

"(2) The Greenwood Grocery Company, defendant, is a corporation doing a wholesale grocery business at Greenwood, with its warehouse located as stated.

"(3) Numerous cars containing interstate shipments, consigned to the Greenwood Grocery Company at Greenwood, Miss., were received at different points on its line by the Yazoo & Mississippi Valley Railroad Company for delivery to the Greenwood Grocery Company at Greenwood, and arrived there over the plaintiff's tracks. These cars were placed on the warehouse track of the defendant, according to custom, to be unloaded, and there remained for the time shown by plaintiff's statement of claim filed herein before being unloaded by defendant. Plaintiff now claims and sues for demurrage for $67, which amount is admitted to be a reasonable charge, and is admitted to be correct, as shown by the said statement of plaintiff; and the plaintiff is entitled to recover said amount, if the court should refuse to allow set-off claimed by defendant.

"(4) Numerous cars containing interstate shipments consigned to defendant at Greenwood were received by plaintiff at different points on its line of railroad for transportation and delivery to the defendant at Greenwood, and arrived there over plaintiff's tracks. Plaintiff then held said cars in its yards at Greenwood for the various times shown by statement of defendant filed herewith, which is admitted to be correct, without delivering them to the defendant. Defendant claims delayage under the rules of the Mississippi railroad commission for $58, the same being figured on the basis of $1 per day per car, which is admitted to be a reasonable charge, and is admitted to be correct, as shown by the statement above mentioned, and asks that the same be allowed as a set-off against the claim of plaintiff; defendant also tenders $9 difference in accounts, interest, and court costs already accrued, which plaintiff refused.

"(5) The issue herein submitted is whether or not defendant can offset in this action by plaintiff its claim for delayage on cars containing interstate shipments, received by plaintiff, but delayed in its yard at destination before delivery by plaintiff to defendant, as against claim of plaintiff for demurrage charges against defendant which accrued at Greenwood, Miss., on cars containing interstate shipments to defendant, and after plaintiff had notified defendant of the receipt of said cars, and had placed them for unloading at defendant's warehouse, its place of business, according to custom, which cars were delayed in unloading after they had been placed for unloading as shown by plaintiff's statement; plaintiff's contention being that the delayage rules of the Mississippi railroad commission, so far as they apply to delays arising after the arrival of cars in the yards of plaintiff at destination, but before delivery at warehouse of defendant, are unconstitutional and void, if the cars contained interstate shipments.

"(6) The copy of the demurrage and delayage rules of the Mississippi railroad commission, hereto attached, is correct, and may be considered in evidence on the trial of this cause."

The rules referred to in the last paragraph of the agreement were adopted by the Mississippi Railroad Commission June 8, 1904, and became effective June 18, 1904. See 90 Mississippi Reports, pp. 392-398, where they are set out in full.

*Mayes & Longstreet,* for appellant.

In *Yazoo, etc., R. R. Co. v. Keystone Lumber Co.,* 90 Miss. 391, this court held that the Mississippi railroad commission had power to make rules relative to reciprocal demurrage; but in so holding this court was careful to say that "there is no question of interstate commerce even remotely involved in this case." And, again, such statement is carefully reiterated in the subsequent statement therein by the court to the following

effect: "We have heretofore said that no question of interference with interstate commerce is presented in any wise by this record."

The first question here is: whether at the time of, and during this period of delay, the character of an interstate shipment still attached to these cars and the freight upon them? Manifestly it was not intended by the agreement to concede this proposition. The agreement, properly construed, means only that the shipments were interstate shipments in and during their transportation, and would be to the point of their arrival at Greenwood. The question just stated remains. Indeed, it is the controversy in the case.

This question is effectually disposed of favorably to the appellant in this case, in *McNeil v. Southern R. R. Co.*, 202 U. S. 543. In that case there was a question of the constitutionality of an order of a state railroad commission, compelling a railroad company engaged in interstate traffic, to deliver cars containing interstate shipments beyond its team tracks, and on a private siding. Certain cars had been shipped to a company at Greensboro, North Carolina; and because there was a controversy pending between this company and the railroad company about an old bill for demurrage, the railroad company refused to deliver the cars in question on the private siding, but placed them on their own team tracks. The railroad company was then sued for penalties, under the rules of the state commission. The supreme court held that those rules were not valid as applied to that transaction, because the shipment was interstate. The court will observe that it is the precise case at bar. There the actual haul in the ordinary sense of the expression, was completed by the arrival of the cars at Greensboro, North Carolina, just as here the actual haul was completed in the ordinary sense of the word by the arrival of the cars at Greenwood, Mississippi; but in that case the railroad company refused to place the cars on the private siding, put-

ting them on its own tracks, and here the railroad company failed to give notice, etc., of the arrival of the cars in question. But, still, in that case the supreme court of the United States held that the character of interstate shipments remained; it held that such character remained until actual delivery to the consignee. *Rhodes v. Iowa,* 170 U. S. 412; *United States v. Railway Co.,* 149 Fed. 486, 491; *Voelker v. Railway Co.,* 116 Fed. 868, 129 Fed. 522; *State v. Adams Express Co.,* 85 N. E. 337; *Adams Express Co. v. Kentucky,* 214 U. S. 218, 222.

Secondly; it being clear that the character of interstate shipment attached until actual delivery to the consignee, under the foregoing decisions, the only remaining question is whether the undertaking on the part of the railroad commission to enforce demurrage charges for making delay in delivery is the placing of a burden on such commerce, or is an undertaking to control such commerce? That it is so is clear. In support of that proposition we cite anew the cases hereinbefore cited, and, also, we cite the further case, which is directly on the question, of *Houston R. R. Co. v. Mayes,* 201 U. S. 321. In that case the supreme court held that a rule imposing a penalty *per diem* for failure to furnish cars on demand was an infringement on the power of congress in such cases, where the cars were demanded by the shippers in order to make an interstate shipment.

We now call attention to section 6 of the interstate commerce act, which is the section requiring the filing and posting of tariffs. Among other things required by said section is the following: "The schedules printed as aforesaid by any such common carrier shall plainly state the places between which property and passengers will be carried, and shall contain classifications of freight in force, and shall also state separately all terminal charges, storage charges, icing charges, and all other charges which the commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any

wise change, affect, or determine any part of the aggregate of
such aforesaid rates, fares, and charges, or the value of the serv-
ice rendered to the passenger, shipper, or consignee. Such sched-
ule shall be plainly printed in large type, and copies for the
use of the public shall be kept posted in two public places in
every depot, station, or office of such carrier where passengers
or freight, respectively, are received for transportation, in such
form that they shall be accessible to the public and can be con-
veniently inspected. The provisions of this section shall apply
to all traffic, transportation and facilities defined in this act."

From the above it will appear that the interstate commerce
act, by express terms, covers all terminal charges, storage
charges, etc. Furthermore, the commission itself has so con-
strued the act; section 75, page 98, of the tariff circular 17-A, is-
sued by the commission. In the said circular, the commission
said: "The act requires that carriers shall publish, post, and
file all terminal charges—which in any wise change, affect, or
determine—the value of the service rendered to the passenger,
shipper, or consignee, and all such charges become a part of
the rates, fares, and charges which the carriers are required to
demand, collect, and retain. Such terminal charges include
demurrage charges." On March 16, 1908, the commission
decided that demurrage rules and charges applicable to inter-
state shipments are governed by the act to regulate commerce,
and therefore are within its jurisdiction and not within the
jurisdiction of the state authorities. Any other view would
open a wider door for the use of such rules and charges to
effect the discriminations which the act prohibits.

In the case of *Mitchie v. N. Y., etc., R. Co.*, 151 Fed. 694,
it is held that the language of the interstate commerce act is
broad enough to include demurrage. Demurrage questions
have frequently been before the interstate commerce commis-
sion and frequently adjudicated by the commission. See *Cud-
ahy Packing Co. v. C. & N. W. R. R. Co.*, 12 Interstate Com-

merce Commission Rep. 446; *Mason v. C. R. I. & P. R. R. Co.,* 12 Interstate Commerce Commission Rep. 61.

*Pollard & Hamner,* for appellee.

The meaning of the term "regulates," in art. 1, § 8, par. 3, of the United States constitution, must govern the decision in this case. If the word is held to mean that every act of a state legislature, or of the state railroad commission, which is a creature of the legislature, is exercising control over commerce between the states in the sense of impeding, obstructing, and hindering it, then we have no standing in court and the judgment should be reversed; but if the terms shall be held to mean that the state may be permitted to pass such regulations through its railroad commission as may affect commerce, but will not impede, obstruct, or hinder the same, the decision of the court below should be affirmed.

The words "to regulate commerce," used in the United States constitution, are so general and extensive that they might be construed to include a vast field of legislation. They must, however, have a reasonable interpretation, and the power should be considered as exclusively vested in congress insofar as the nature of the power requires. Some subjects call for uniform rules and national regulations; others can be best regulated by rules and provisions suggested by the varying circumstances of different localities and limited in their operation to such localities respectively; to this extent the power to regulate commerce may be exercised by the states.

Rule 10 of the Mississippi railroad commission is the reciprocal demurrage rule. Is it such a rule as will hinder, obstruct or impede commerce between the states? Is it not rather such a rule as expedites commerce and aids it, in that it permits no delays to the consignee in getting his goods delivered that are consigned to him; and to the buying public in getting their goods from the consignor? And does it not further expedite

commerce in that it forces the railroad companies to promptly deliver and unload cars so that they may be put back into service immediately and thereby avoid shortages and congestions which continually confront shippers, especially during the busy seasons of the year? In short, is it not a reasonable requirement imposing no additional duty or burden upon the carrier? The *Keystone Lumber Co. case,* 90 Miss. 391, strongly asserts this argument, though in that case the shipments in question were not interstate shipments, and we cite it, not because it is decisive of the main issue involved in the case at bar, but because the reasoning as to the justice of the rule and the results of expeditious handling of freight is applicable as well to the case at bar as to the particular case decided. We are confident that the court will find, after a thorough investigation, that the following is the true rule; where the rules and the law passed by the state authorities expedite, aid and assist interstate commerce and impose no additional duty or burden upon the carrier, then they are not in conflict with the United States Constitution; but where the rules impede, hinder or obstruct interstate commerce, or place additional burdens thereon, they are in contravention of the above Constitution and therefore void, it being conceded that the United States Constitution control where state laws or regulations do not conform to it, just as the acts of congress govern where they conflict with state laws. If congress had passed an act regarding this particular phase of interstate commerce, any state law or regulation in conflict would be void; but until congress acts the states have the right to pass laws governing interstate commerce so long as they do not impede, obstruct or hinder such commerce. This is the first test, and we respectfully call the attention of the court to the point in reading the decisions cited both by appellant and appellee. It will further be found that practically all of the cases adjudging legislative enactments void, so hold, because the law passed, in the way of a tax, or condition is a direct burden or duty imposed on commerce, or in some way

interferes with its freedom.    *Gloucester v. Pennsylvania,* 29.
Law. Ed. 166; *Mobile County v. Kimball,* 26 Law. Ed. 238;
*Smith v. Alabama,* 31 Law. Ed. 238; *Escanaba, etc., Transpor-
tation Co. v. Chicago,* 27 Law. Ed. 442, 446; *Western Union Tel-
egraph Co. v. James,* 40 Law. Ed. 1105, 1109; *Western Union
Telegraph Co. v. Tyler,* 44 Am. St. Rep. 914, 915; *Hennington.
v. State of Georgia,* 41 Law. Ed. 166; *Sherlock v. Alling,* 23.
Law. Ed. 820.

MAYES, J., delivered the opinion of the court.

This suit was begun in a justice court of Leflore county by ap-
pellant, and the purpose of the suit is to recover from the Green-
wood Grocery Company the sum of $67, claimed by appellant to
be due it by appellee as demurrage on certain cars containing in-
terstate shipments of goods to appellee.    The Greenwood Gro-
cery Company undertook to offset this claim with a counterclaim
of $58, claimed by it to be due it by appellant as reciprocal de-
murrage charges.    The case was tried in the justice court, and
appealed to the circuit court, and tried on an agreed record.    In
the agreed record the facts are stated as concisely as it is possible
for them to be stated, and we shall therefore only touch upon the
leading features of the case in so far as the facts are concerned.
It is agreed that the cars about which the Greenwood Grocery
Company claims the right of reciprocal demurrage contained.
interstate shipments.

The real issue in the case is whether or not the Greenwood
Grocery Company can offset its claim for reciprocal demurrage
against the claim of plaintiff for demurrage charges against it.
It is asserted by appellant that this cannot be done, for the rea-
son that the cars contained interstate shipments, and to allow
this offset would be in violation of the federal laws.    The recip-
rocal demurrage claim of the Greenwood Grocery Company
grows out of delays on the part of appellant, occurring in the
yards of appellant, and after the interstate shipment reached its

.:destination. No question of the unreasonableness of the delay-age charges is involved in this case in any way. As counsel for appellant put it in their brief: "The sole question in the case is whether it is competent for the state railroad commission to promulgate a reciprocal demurrage or delayage rule, which would impose upon the railroad company a charge for delay in the delivery of an interstate shipment. It is a question of the power of the railroad commission to act in the premises." The trial in the court below resulted in a judgment favoring the contention of the Greenwood.Grocery Company, thereby sustaining the power of the commission to impose these delayage charges on interstate shipments, and from this judgment an appeal is prosecuted here.

We may say in the outset that the right and power of the state railroad commission to establish these delayage charges, in so far as intrastate shipments are concerned, was upheld in the case of *Yazoo, etc., R. Co. v. Keystone Lumber Co.,* 90 Miss. 391, 43 South. 605. In the above case there was no question of interstate commerce involved. We may further state that we do not deem it necessary to a decision in this case to determine when a shipment of goods loses its character as interstate commerce. The appellants deny the power of the state railroad commission to promulgate any reciprocal demurrage rule which imposes a charge for delay on appellant, when the charge is sought to be applied to any interstate shipment.

The first case which counsel for appellant cite as sustaining this contention is the case of *McNeill v. Southern Ry. Co.,* 202 U. S. 543, 26 Sup. Ct. 722, 50 L. Ed. 1142. This case does not seem to us to sustain the contention. Let us see what the facts of the *McNeill case* were. The Greensboro Ice & Coal Company had a coal and wood yard located some distance from the main track and right of way of the Southern Railway Company. From this main track there was a private spur track leading over the land of private persons to the ice and coal company's place

of business.    It seems that the railroad had delivered the freight of the ice and coal company at its place of business by hauling it over this spur at one time; but, a dispute having arisen between the railroad company and the ice and coal company concerning demurrage on thirteen cars of coal and wood, the railroad notified it that thereafter it would only deliver its cars on the public track of the railroad known as the "team" track, on which track all deliveries were made to the public generally. Subsequently the ice and coal company ordered other coal and wood for interstate shipment over the line of the railroad, and when it arrived the railroad company placed it on the track and notified the ice and coal company.    The coal company declined to receive the cars elsewhere than on the spur track, and the railroad company declined to deliver same there.    A complaint was filed by the coal company with the corporations commission, and that commission ordered the railroad company to make delivery beyond its right of way and on the private siding.    On the above facts, the court held that the order of the commission was void, because it required carriers engaged in interstate commerce to deliver cars containing such commerce beyond their right of way and to a private siding, thus manifestly imposing a burden so direct and onerous as to leave no doubt that it was a regulation of interstate commerce.    But in this very case the supreme court of the United States says that it does not draw in question the right of a state, in the exercise of its police authority, to confer on an administrative agency the power to make any reasonable regulations concerning the place, manner, and time of delivery of merchandise moving in the channels of interstate commerce.

There is a marked distinction between the *McNeill case,* above quoted from and cited, and the case now being reviewed by this court.    In the *McNeill case* it was sought to compel the railroad company to haul the goods beyond the line of the company and beyond their proper destination; that is to say, carry them over a private siding to the place of business of the con-

signee.    But in the case under review there is no such attempt.
The rule simply operates to compel a reasonably quick delivery
to the consignee on the main line of the railway, and amounts to
nothing more than a regulation as to the time of delivery, the
reasonableness of which is not questioned. · It is simply claimed
by appellant that, whether reasonable or unreasonable, the rail-
road commission has no power to make this regulation as to in-
terstate shipments.    When the whole of the regulation is simply
addressed to compelling prompt delivery of the goods, thus en-
abling the cars to be placed in service for other shippers more
speedily, what burden can it be said that such a regulation im-
poses on commerce?    It does not seem to us that the case of
*McNeill v. Southern Railroad Company,* cited above, can be said
to be any authority for appellant; but it is more an authority for
appellee when the facts are analyzed.

The next case mainly relied upon by appellant's counsel is the
case of *Houston R. R. Co. v. Mayes,* 201 U. S. 321, 26 Sup. Ct.
491, 50 L. Ed. 772.    An analysis of this case in the light of its
facts easily distinguishes it from the case on trial.    The case
last cited involved the constitutionality of a Texas statute which
provided that whenever a shipper should make requisition, in
writing, for a number of cars to be furnished at any point indi-
cated within a certain number of days from the receipt of the
application, and should deposit one-fourth of the freight with
the agent of the company, the company on failing to furnish the
cars should forfeit $25 per day for each car failed to be fur-
nished; the only proviso being that the law should not apply in
case of strikes or other public calamity.    The court held the
statute void as applied to interstate commerce, but also said that
the statute was not far from the line of proper police regulation.
We do not think any principle announced by the *Mayes case,*
cited above, is controlling here, or that the contention of appel-
lees in any way conflicts with the principles announced in either
of the cases already cited.

Several other cases are cited by counsel for appellant, but it is our judgment that these cases cannot be relied on as authority by appellant.    The cases to which we allude are *Rhodes v. Iowa,* 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088; *U. S. v. Railway* (D. C.) 149 Fed. 486; *State v. Adams Express Co.,* 171 Ind. 138, 85 N. E. 337, 966, 19 L. R. A. (N. S.) 93; *Adams Express Co. v. Kentucky,* 214 U. S. 218, 29 Sup. Ct. 633, 53 L. Ed. 972.

Much of the difficulty in this case is dissolved when we keep in mind the fact that the whole of the duty of a railroad company is not discharged in an interstate shipment merely by the transportation of the goods to point of destination    The railroad company owes the further duty, under the general law of the land, to deliver the goods to the consignee.    In order to do this, it is bound to so place the goods as that the consignee may get possession of them; else it fails in its duty, and the goods can be of no use to the owner of same.    This being so, the order of the railroad commission fixing delayage charges is merely an order enforcing a general duty that rests upon the carrier, and is in aid of, and not an obstruction to, commerce.  Such an order imposes no additional burden on the carrier.    The burden is already there as a common duty.    It is a part of the contract of carriage, and the consideration paid by the shipper for the transportation of the goods is paid in part for the fulfillment of this very duty.    The grocer can make no use of his goods until he can unload them from the cars, the cars cannot be further used for transportation until they are unloaded, the cars cannot be unloaded until they are so placed as that they may be reached for this purpose, and it is the duty of the carrier to arrange for all these things, whether the shipment be intra or inter state, failing in which the very purpose of transportation itself fails.    In view of these facts, how can it be held that a regulation, which merely compels a performance of an already existing burden, can be said to impose any additional burden on commerce?

In the case of *Charles v. Atlantic Coast Line,* 78 S. C. 36, 58 S. E. 927, 125 Am. St. Rep. 762, it appears that South Carolina had a statute imposing a penalty of $50 on every common carrier that failed to adjust any claim for loss or damage to freight while in its possession within a certain period therein named. It was argued that this statute was void as to interstate shipments, but the court said: " 'The duty to make prompt settlement for loss or damage to goods is but an incident of the duty to transport and deliver safely and with reasonable diligence. The statute in question was designed to effectuate an important public purpose, viz., to compel the common carrier to perform with reasonable diligence the duty which peculiarly appertains to his business as a carrier of freight. The penalty is but a means to that end.' While it is not easy to define the exact limits of the operation of state laws as affecting interstate commerce, we have no hesitation in saying that the statute in question, as it affects carriers doing business in this state who fail or refuse to adjust and pay the loss of or damage to goods while in their possession, is no unlawful interference with interstate commerce, even as applied to an interstate shipment. The penalty imposed is for a delict of duty appertaining to the business of a common carrier, and, in so far as it may affect interstate commerce, it is an aid thereto, by its tendency to promote safe and prompt delivery of goods, or its legal equivalent—prompt settlement of proper claim for damages." In the case of *Harrill v. Railway Co.,* 144 N. C. 532, 57 S. E. 383, it seems that a statute of North Carolina provided a penalty on any common carrier for failure to deliver goods to consignee on arrival. It was contended that the statute could have no application to interstate traffic; but the court held that the statute merely enforced a common-law duty, which was in aid of, rather than an obstruction to, interstate commerce, and was valid. In the case of *Telegraph Co. v. James,* 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105, the United States supreme court held that an act of the the legisla-

ture, which merely imposed a penalty on a telegraph company for the violation of a duty which it owed by the general law of the land, was no regulation of, or obstruction to, interstate commerce, within the meaning of the federal Constitution. See, also, the cases of *Seaboard Air Line v. Seegers,* 207 U. S. 73, 28 Sup. Ct. 28, 52 L. Ed. 108; *State v. Adams Exp. Co.,* 171 Ind. 138, 85 N. E. 337, 966, 19 L. R. A. (N. S.) 93 and note; *Morris v. Express Co.,* 146 N. C. 167, 59 S. E. 667, 15 L. R. A. (N. S.) 983; *Bagg v. Railroad Co.,* 109 N. C. 279, 14 S. E. 79, 14 L. R. A. 596, 26 Am. St. Rep. 569; *Porter v. Charleston & S. R. Co.,* 63 S. C. 169, 41 S. E. 108, 90 Am. St. Rep. 671.

We have given to this case the most careful and protracted examination, and it is our view that the rule of the state railroad commission fixing reciprocal delayage rules is perfectly within their power  It imposes no additional duty on the carrier, but merely compels the fulfillment of a duty that is an incident to the contract of carriage.   It is in aid of commerce, rather than an obstruction to it, and operates after the transportation is completed.                                        *Affirmed.*