D. L. REID and Wife v. SOUTHERN RAILWAY COMPANY.

(Filed 30 November, 1910.)

1. Carriers of Freight—Refusal to Accept—Penalty Statutes—Interstate Commerce—Interpretation of Statutes.

There being no act of Congress relating to the provisions of the Revisal, 2631, imposing a penalty on a common carrier for refusing to accept freight for shipment when tendered, this section of the Revisal is constitutional in its application to interstate shipments.

2. Same—Through Bills of Lading—Liability of Initial Carrier.

It appears in this case that the defendant carrier refused to receive for shipment from the plaintiff goods tendered to it, and based its right to refuse upon the ground that it was necessary for the shipment to go over lines of connecting carriers in order to reach its destination and that no joint rate had been made, or filed with the Interstate Commerce Commission, known as section 6 of the Interstate Commerce Act. The plaintiff offered to prepay the freight, and asked for a bill of lading. *Held,* (1) it was the common-law duty of the defendant, as well as its statutory duty, to accept the shipment, forward it to its connecting line; and to use reasonable means of ascertaining the rate of freight, by wire if necessary, for the issuance of a through bill of lading, which in this case it did not use; (2) it was no defense that the joint rate had not been made or filed as required by the United States statutes; (3) the mere tender of freight charges by the plaintiff and a request for a bill of lading was not a demand for a through bill of lading, so as to justify the refusal of the defendant to accept the shipment; (4) section 20 of the Interstate Commerce Act, making the initial carrier liable for the default of itself and connecting carriers to point of destination, has no application to the facts of this case.

BROWN, J., dissenting; WALKER, J., concurring in dissenting opinion.

APPEAL from *Webb, J.,* at the March Term, 1910, of MECKLENBURG.

On 17 September, 1907, the *feme* plaintiff tendered to the defendants at its freight depot in Charlotte, N. C., a lot of household goods for shipment to Davis, West Virginia, a station on the West Maryland Railroad. She offered to prepay the freight charges, and asked for bill of lading. The defendant declined to receive said goods for shipment, as requested. Again on 18, 19, 20, 21 and 23 September, she renewed her requests

to the defendant to receive said freight for shipment, as above stated, but the defendant refused to accept same until 23 September, 1907, when it informed the plaintiff that the amount necessary to prepay the freight was $34.08. The plaintiff thereupon paid the same, and the defendant then accepted said freight for shipment, and issued a bill of lading therefor.

On 17 September, when the plaintiff first tendered the goods and demanded the bill of lading, the defendant's agent informed the plaintiff that there was no established rate for shipment to Davis, West Virginia, and that none had been filed or published, and that he had no authority to receive said goods. Said agent on that day wired the proper authority to obtain the freight rate and for permission to receive said shipment. On 23 September he received such information and permission, and thereupon accepted the freight and issued a bill of lading therefor. At the date of said tender, on 17 September, there was a telegraph office at Davis, West Virginia. The plaintiff remained at Charlotte from 17 September to 23 September, waiting the shipment of said household goods.

The above facts were agreed and it was further agreed that the plaintiff's damage, if she is entitled to recover any, by reason of said delay in Charlotte was $25.

Upon the facts agreed the judge rendered judgment for $250, being penalty of $50 per day for refusal to accept freight tendered for shipment on each of five different days, and $25 compensatory damages, and the cost of this action. The defendant appealed.

*Stewart & McRae* for plaintiff.
*W. B. Rodman* for defendant.

CLARK, C. J. The defendant contends that Revisal, 2631, is invalid, so far as it undertakes to impose a penalty on a common carrier for refusing to receive a shipment of freight from one State to another, but concedes that this Court has heretofore decided this point against it. In *Lumber Co. v. R. R.,* 152 N. C., 72, it is said: "We have repeatedly passed against this contention. The defendant's brief admits this and cites eight decisions of this Court which it asks us to overrule. In one of

the latest of these, *Reid v. R. R.,* 149 N. C., 423, the authorities were reviewed, and the court said: 'The defendant contends that Revisal, 2631, giving a penalty for refusing to accept freight for shipment is unconstitutional when the freight is to be shipped into another State. But refusing to receive for shipment is an act wholly done within this State; is not a part of the act of transportation, and our penalty statute applies.' " The Court then cited *Bagg v. R. R.,* 109 N. C., 279; *Currie v. R. R.,* 135 N. C., 536, both of which had been cited and reaffirmed by *Walker, J.,* in *Walker v. R. R.,* 137 N. C., 168. In *Twitty v. R. R.,* 141 N. C., 355, *Brown, J.,* held that where the agent refused to give the bill of lading because he did not know what the freight rates were, this was a refusal to receive for transportation and the carrier was responsible for the penalty, even though he put the goods in the warehouse. In *Harrill v. R. R.,* 144 N. C., 532, *Walker, J.,* held that a penalty for failure to deliver freight, was valid though the freight was interstate. There the penalty was incurred after transportation had ceased. Here the penalty occurred before the transportation had been begun, and before the freight was received or accepted for transportation.

*Reid v. R. R.* was again before the Court, 150 N. C., 753, and was reaffirmed, *Hoke, J.,* citing *Morris v. Express Co.,* 146 N. C., 167, which held "The State may, in the absence of express action by Congress or by the Interstate Commerce Commisison, regulate for the benefit of its citizens local matters indirectly affecting interstate commerce," and cited as sustaining that position *R. R. v. Flour Mill,* 211 U. S., 612, which laid down the same proposition in a case which involved the right of the State Court to compel a railroad company to place cars on a siding for the convenience of a flouring mill engaged in making shipments in interstate commerce.

The above decisions were followed by *Connor, J.,* in *Garrison v. R. R.,* 150 N. C., 575, 592, with a full review of the authorities and no dissent. In fact, the duty to receive freight "whenever tendered" was a common law duty. *Alsop v. Express Co.,* 104 N. C., 278, which was cited and approved in *Garrison v. R. R., supra,* 582.

Interstate commerce does not begin "until the articles have been shipped or started for transportation from one State to the other" was said by *Bradley, J.,* in *Coe v. Errol,* 116 U. S., 517, (citing *In re Daniel Ball,* 10 Wall., 565), which has since been cited with approval in *Match Co. v. Ontonagon,* 188 U. S., 94. The statutory enforcement, under penalty, of the common law duty to accept freight "whenever tendered" is not within the scope or terms of any act of Congress. It is neither an interference with nor a burden upon interstate commerce.

The second point the defendant makes is that it could not receive for shipment freight going from one State to another, until the rates of freight to such points had been filed with the interstate commerce commission, as required by the United States statute. The defendant's brief concedes that this point also has been held against him by this Court. The act of Congress, the Interstate Commerce Act, sec. 6, provides: "Every common carrier, subject to the provisions of this act, shall file with the commission created by this act, print and keep open to public inspection schedules showing all the rates, fares and charges for transportation between different points on its own route, and between points on its own route and points on the route of any other carrier by railroad, by pipe line or by water, *when a through route and joint rate have been established."* If no through route and joint rate from Charlotte to Davis, West Virginia, had been established, it was not therefore prohibited to the defendant to receive this freight. It cannot be expected that a freight rate to every railroad station in the Union from Charlotte must be established and published before the railroad can receive freight for any point outside this State, at Charlotte. The Federal statutes does not prohibit the receipt or forwarding of a single shipment, but forbids the carrier to "engage or participate in the transportation of passengers or property," interstate, without filing its rates. It is the *business* of a common carrier which the defendant is forbidden to exercise without filing its rates. The statute has no application to this case, where the defendant was carrying on such business, presumptively, at least, under the authority of law. *Harrill v. R. R.,* 144 N. C., 540. If, however, the defendant was in default in

REID *r.* RAILWAY COMPANY.

not having complied with the Federal statute to establish and post its rates, this would not be a defense to its other default in failing to comply with its common law duty to receive all freight when tendered, under penalty prescribed by a State statute.

Besides, there was nothing which prevented the defendant from accepting the freight to be shipped to the end of its line, there to be delivered to other carriers to be transported to Davis, West Virginia. This it actually did when it finally received this freight and gave its bill of lading therefor on 23 September. · The bill of lading recites the receipt of the freight in good order, marked as destined for Davis, West Virginia, and stipulates *"which said carrier agrees to carry to its said destination, if on its own road, or otherwise to deliver to another carrier on the route to said destination."* There was no reason why the defendant could not have received this freight on the very first day it was tendered, as it was its duty to do, and have given a bill of lading in the identical words that it gave on 23 September. It could have shipped the goods and made the freight payable at destination or it could have foregone the receipt of freight till it could have ascertained by wire the amount thereof, which could have been done while the goods were proceeding on their way. The plaintiff did not demand prepayment of freight, as the condition precedent to acceptance of the goods. She merely offered to prepay.

In *Twitty v. R. R.,* 141 N. C., 355, *Brown, J.,* says: "The fact that the agent did not know the freight rates is no excuse. It is his duty to know them. At least, he could readily have telegraphed and ascertained, and need not have refused to give a bill of lading on that account." So, here, it is no defense that the defendant had not established its rates. It was its duty to have done so. It could have received and shipped the freight and ascertained the rates while the goods were in transit. It could not plead its default to the United States government as a defense for its default in its duty to the plaintiff. *Currie v. R. R.,* 135 N. C., 537; *Bagg v. R. R.,* 109 N. C., 279; 26 Am. St., 569; 14 L. R. A., 596.

In *Tel. Co. v. James,* 162 U. S., 650, a State statute was held valid which required telegraph companies to receive and deliver

promptly all telegrams, and it was held that this applied to interstate messages. This has been quoted and approved in *R. R. v. Flour Mills,* 211 U. S., 622. It was held in *Tel. Co. v. James* that a State statute was not void as affecting interstate commerce, unless "it necessarily affected the conduct of the carrier, and regulated him in the performance of his duties outside and beyond the limits of the State enacting the law." But the State statute is valid if it "can be fully carried out and obeyed without in any manner affecting the conduct of the company with regard to the performance of its duties in other States, and would not unfavorably affect or embarrass it in the course of its employment and hence until Congress speaks upon the subject it would seem that such a statute must be valid."

In *Morris v. Express Co.,* 146 N. C., 167, this Court held valid Revisal, 2634, imposing a penalty for failure to adjust and pay in 90 days a valid claim for damages to goods shipped from points without the State. In a very recent case *Chief Justice Fuller,* in *R. R. v. Mazursky,* 216 U. S., 122, held exactly the same proposition, approving what had been said by *Mr. Justice Peckham, Tel. Co. v. James, supra.*

And finally the defendant objects that by reason of sec. 20 of the Interstate Commerce act the initial carrier who issues a bill of lading is liable for the default not only of itself, but of each of the successive carriers to the point of destination, and therefore the State ought not to compel it to issue a bill of lading. It seems to question the constitutionality of the act of Congress. The act of Congress is merely declaratory of what was the common law in this respect and has been held constitutional in *Smeltzer v. R. R.,* 158 Federal, 649; *R. R. v. Crenshaw* (Ga.), 63 S. E., 865. The defendant having held itself out as a common carrier was liable if it refused to receive and carry goods for points beyond its own line. *R. R. v. Wolcott,* 141 Ind., 280; *R. R. v. Morton,* 61 Ind., 577. But whether such act of Congress is valid or invalid does not arise in this case. If invalid, the defendant could have received the goods and asserted its liability only to the extent of damages received on its own line, as it actually did in the bill of lading which it issued when it received these goods on 23 September. But if the act is constitu-

REID *v.* RAILWAY COMPANY.

tional, the defendant could not on that account delay or decline to receive this shipment as long as it was in the business of a common carrier, and carrying goods for other shippers to be transported to points outside the State. Unless the act of Congress is constitutional "the mere designation of the destination of the goods in the contract with the first carrier will not make it a contract for through transportation, where the other terms indicate a limitation of liability to the end of the contracting carrier's line." 6 Cyc., 481; *Phillips v. R. R.,* 78 N. C., 294. This question, as already said, does not arise in this case, and if it did it would in nowise affect the duty of the defendant to receive the plaintiff's goods when tendered for shipment. The measure of responsibility, for damages if any should arise, is entirely separate and apart from the duty to accept and ship the goods.

No error.

BROWN, J., dissenting. There are two questions presented by this appeal:

1. When the plaintiff tendered her goods for shipment from Charlotte, N. C., to Davis, West Virginia, and demanded a bill of lading, was the transaction one of interstate commerce, so as to exclude the imposition of penalties under the State law?

2. Can the State penalize the defendant for refusing to give a bill of lading to Davis, West Virginia, a point beyond its own line, and to which point it had made and published no rates?

These questions are discussed in my dissenting opinion in *Burlington Lumber Co. v. R. R.,* 152 N. C., 76, and for the reasons given therein I cannot concur in the judgment of this Court.

The case of *Twitty v. Southern Railway Co.,* 141 N. C., 356, in which I wrote the opinion of the Court, is cited as authority for the ruling in this case. In the *Twitty case* the shipment tendered was from Rutherfordton, N. C., to Hendersonville, N. C., points in same State and on defendant's line of railway.

I think a cursory reading of the facts of the case and the opinion of the Court will disclose that the case has no application here.

*Harrill v. Railway Co.*, 144 N. C., 532, likewise has no application to this case, for there the transportation had been completed and there was nothing to do but to deliver the goods. There was no regulation of commerce or anything which was calculated to embarrass or impede the railroad company in the performance of its duty as an interstate carrier. That case was governed by the decision in *Telegraph Co. v. James*, 162 U. S., 650. The company was not required to receive and carry goods beyond the State but merely to deliver those which it had brought into it. The distinction between the two cases is apparent.

Mr. Justice Walker concurs in dissenting opinion.