STATE v. J. J. DAVIS.

(Filed 20 December, 1911.)

1. Usury—Furniture—Misdemeanor—Debtor and Creditors—Classification—Constitutional Law.

Our Legislature has the power under its police regulations to make the taking of usury on household and kitchen furniture a criminal offense, and the right of classification, in the enforcement of proper police regulations on this subject, is referred, very largely, to the legislative discretion.

2. Same.

Revisal, sec. 3712 (a), which makes it a misdemeanor for "any person, firm, or corporation" to loan money "by note, chattel mortgage, conditional sale, or otherwise, upon any article of household or kitchen furniture," at a greater rate of interest "than six per cent before or after such interest shall accrue, etc.," is a classification on a reasonable ground, and not an arbitrary selection, and therefore not objectionable as an unlawful division of money-lenders into two classes within the intent and meaning of the fourteenth amendment of the Federal Constitution.

3. Same—Interpretation of Statutes—Usury Charged or Reserved.

It was proven that the defendant, indicted under Revisal, sec. 3712 (a), made a loan of $10, taking a note for $16.75, secured

by a mortgage on household and kitchen furniture, worth at least $25: *Held*, under the language of our statute, the charge of the usurious interest constituted the offense without the necessity of having received it; and under the facts of this case an usurious rate of interest for the period of the loan, to wit, $1.75, was actually reserved.

APPEAL from *Lyon, J.*, at July Term, 1911, of FORSYTH.

Criminal action for taking unlawful interest, tried on appeal from the municipal court.

There was evidence on the part of the State tending to show that, on or about 24 October, 1910, John Wolff, desiring to borrow $10, applied to one A. R. Bridgers, who was lending money for defendant; that the said Bridgers, with the knowledge, assent, and direction of defendant, advanced to said Wolff $8.25, taking his note to himself as attorney for defendant, in the sum of $16.75, payable in thirty days, and to secure same took a chattel mortgage on the household and kitchen furniture of said Wolff. That the property included in the mortgage had originally cost about $75 and was worth at the time the mortgage was executed about $25. That Wolff paid on the debt $3.50, and default having been made, the property was seized under claim and delivery and sold at public auction for $10.45. "The auctioneer cost $1; costs, claim and delivery, $3 or $4; credit on mortgage, about $4, and after applying proceeds as indicated, there was balance claimed by defendant of about $2.50."

There was evidence on part of defendant tending to show that there were claims included in the mortgage other than the money loaned and that the usurious features of the transaction were without the knowledge or approval of the defendant. On a charge, correctly stating the law as declared in the statute, there was verdict, "Guilty." Judgment, and defendant excepted and appealed.

*Attorney-General Bickett and Assistant Attorney-General George L. Jones for the State.*

*L. M. Swink for defendant.*

HOKE, J., after stating the case: The statute law of the State more directly relevant to the question presented, Revisal, sec. 3712 (a), among other things, makes provision as follows:

"If any person, firm, or corporation who shall or may loan money in any manner whatsoever by note, chattel mortgage, conditional sale, or otherwise, upon any articles of household or kitchen furniture, shall take, receive, reserve, or charge a greater rate of interest than 6 per cent, either before or after such interest shall accrue," etc., "shall be guilty of a misdemeanor," etc.

Under a charge which correctly states the provisions of the statute, the jury have found that usurious interest has been charged by defendant; that the obligation was secured by a mortgage on the household and kitchen furniture of the debtor. There is ample evidence to justify the verdict, and the conviction must be upheld if the statute itself is a valid law. It is insisted for the defendant that the statute is in contravention of the fourteenth amendment to the Federal Constitution in that it "unlawfully divides money-lenders into two classes, those lending on household and kitchen furniture and on other kinds of property, and unlawfully discriminates against borrowers, putting borrowers, having only one class of property, to wit, household and kitchen furniture, into a class different from the borrower having other kinds of property to offer"; but the position cannot, in our opinion, be maintained.

The power of the Legislature to make the taking of usury, under certain conditions, a criminal offense is well recognized. *Ex parte Edward Berger,* 193 Mo., 16; *S. v. Winkenhoepper,* 6 Del., 120, and the right of classification, in the enforcement of reasonable and proper police regulations on this and other subjects is referred, very largely, to legislative discretion.

In *Insurance Co. v. Daggs,* 172 U. S., at page 362, the Supreme Court of the United States, the Court having, with us, the final word on this subject, referred to this right of classification as follows: "It is not necessary to state the reasoning upon which classification by legislation is based or justified. This Court has had many occasions to do so, and only lately reviewed the subject in *Magoun v. Illinois Trust and Savings*

*Bank,* 170 U. S., 283. We said in that case that 'The State may distinguish, select, and classify objects of legislation, and necessarily the power must have a wide range of discretion.' And this because of the function of legislation and the purposes to which it is addressed. Classification for such purposes is not invalid because not depending on scientific or marked differences in things or persons or in their relations. It suffices if it is practical, and is not reviewable unless palpably arbitrary," the limitation being that "the classification has been made on some reasonable ground, something that bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection." *Ellis v. R. R.,* 165 U. S., 151; *Morris-Scarboro Co. v. Express Co.,* 146 N. C., 170, and numerous and repeated decisions of that Court are in affirmance and illustration of this principle. *Avenue Coach Co. v. New York City,* 221 U. S., 467; *Lindsay v. Gas Co.,* 220 U. S., 61; *Engel v. O'Mally,* 219 U. S., 128; *Bank v. Kansas,* 219 U. S., 121; *McLean v. Arkansas,* 211 U. S., 540; *Heath v. Mulligan Manufacturing Co.,* 207 U. S., 338; *N. Y. v. Van DeCarr,* 199 U. S., 552; *Loon Hing v. Crawley,* 113 U. S., 704. In *Coach Co. v. N. Y., supra,* it was held: "Classification based on reasonable distinctions is not an unconstitutional denial of equal protection of the laws; and so held that an ordinance of the city of New York prohibiting advertising vehicles in a certain street is not unconstitutional as denying equal protection to a transportation company operating stages on such street, either because signs of the owners may be displayed on business wagons or because another transportation company may display advertising signs on its structure. There is a purpose to be achieved, as well as a distinction, which justifies the classification." In *Lindsay v. Gas Co.,* the Court said: "The equal protection clause of the fourteenth amendment admits of a wide exercise of discretion, and only avoids classification which is purely arbitrary, being without reasonable basis. Nor does a classification having some reasonable basis offend because not made with mathematical accuracy or resulting in some inequality." And in *Engle v. O'Mally, supra,* it is said, approving the same statement in *Heath v. Mulligan Co.,* 207 U. S., 338: "That

legislation which regulates business may well make distinctions depend upon the degree of evil, and although when size is not an index, a law may not discriminate between the great and the small proper regulations based thereon, when size is an index of the evil to be prevented, do not offend the equal protection clause of the fourteenth amendment. In *McLean v. Arkansas,* 211 U. S., *supra,* a regulation establishing a different method of mining coal, by which the wages of laborers were to be ascertained between miners when less than ten miners were employed and those having a larger number was implied. And on this very subject of usury and in *Berger's case, supra,* differing penal provisions were upheld in case of ordinary usury, and when the charge was greater than 2 per cent per month. And in *Winkenhoepper's case, supra,* between loans not exceeding $100 and loans of that sum or greater.

If these various classifications have been sustained by our highest Court, assuredly a law designed and intended to protect and maintain the home of the citizen should be upheld. If the schools of thought which tend to corrupt and undermine, if the forces which make for disorder and anarchy should ever be able to combine and so far increase as to threaten our social fabric, it is the home, the influences that hallow and emanate from it, which will arise and be potent to save.

Referring to this subject as a proper basis for classification, our Attorney-General, in his argument before us, has well said: "Prior to the adoption of the present Constitution, household and kitchen furniture to the value of $200 was exempt from execution. The lawmaking power of this State has always realized that the loss of those articles necessary for comfortable and decent living entails great suffering upon women and children, frequently resulting in the breaking up of a home and in the creation of conditions which are a menace to the public health and to the public prosperity.

"The statute under consideration is a logical and lawful extension of the protection which it has always been the policy of the law to afford this peculiar class of property. The General Assembly knew that the man who mortgages his household

goods does so because he has nothing else to mortgage. He is the poor man, the illiterate man, and his poverty and his ignorance make him the easy prey of the usurer.

"The General Assembly also knew that in some of the cities of the State there were springing up a class of men who were selling money, like furniture, on the installment plan. It was to save the things necessary to the existence of a home from the grasp of such men that the act of 1907 was passed.

"We submit that the statute tends to preserve the domestic peace, to promote the family health and prosperity, and is a valid exercise of the police power of the State.

"It is not class legislation; it operates alike on all who take mortgages on household and kitchen furniture. It regulates a business and does not create a class."

It was further contended that inasmuch as the property on its sale had not repaid the actual amount of the loan, no usury had been received and therefore no violation of the statute had been established, citing *Rushing v. Bevins,* 132 N. C., p. 273. That was an action by the debtor to recover a penalty allowed by the statute of "twice the amount of usury paid," and the Court held, in effect, that to justify a recovery, it must be made to appear that usurious interest had been paid in money or money's worth, and a note of the debtor, given therefor, did not amount to such payment. The case does not apply here, when the statute makes it a misdemeanor to take, receive, reserve, or charge a greater rate than 6 per cent.

The evidence of the State tends to establish that "for a loan of $10 a note of $16.75 was taken, secured by a mortgage on household and kitchen furniture worth at least $25," which would constitute an usurious transaction within the meaning of the statute. 5 A. and E., p. 886, citing *Bank v. Wareham Co.,* 49 N. Y., 635; and, in any event, it appears further that on a loan of $10 for thirty days, $1.75 was reserved at the time the money was supplied.

There is no error, and the judgment must be affirmed.

No error.